# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

| | |
|---|---|
| **SAQIB ALI**<br>Montgomery County, Maryland<br><br>        Plaintiff,<br><br>    v.<br><br>**LAWRENCE HOGAN**, in his official capacity<br>as Governor of Maryland,<br>100 State Circle<br>Annapolis, MD 21401<br><br>**BRIAN FROSH**, in his official capacity as<br>Attorney General of Maryland,<br>200 St. Paul Place<br>Baltimore, MD 21202<br><br>        Defendants. | Case No.<br><br>**COMPLAINT AND JURY DEMAND** |

Plaintiff Syed Saqib Ali by and through his undersigned counsel, CAIR LEGAL DEFENSE FUND ("CAIR"), files this Complaint against Governor Lawrence Hogan and Brian Frosh (collectively "Defendants"). The Complaint alleges violations of the First and Fourteenth Amendments to the United States Constitution pursuant to 42 U.S.C. § 1983.

## INTRODUCTION

1. The First Amendment protects the rights of all speakers to advocate for all viewpoints on issues of public concern. "If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith therein." *West Virginia State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943).

2.      The conflict between Israel and Palestine is a longstanding issue of considerable public concern, both in the United States and internationally, to which politicians, professionals, and the press dedicate considerable energy and resources.

3.      In 2017, the Governor of Maryland chose to categorically take Israel's side in this international conflict by issuing Executive Order 01.01.2017.25 (**Exhibit A**).  This Executive Order bars all Maryland executive agencies from executing contracts with those who boycott Israel or companies with ties to the occupied territories.   The Executive Order even prevents those who participate in such boycotts from applying for state contracts.

4.      Saqib Ali is a computer software engineer who wishes to submit bids for government software project contracts but is barred from doing so due to the presence of mandatory "No Boycott of Israel" clauses.  Saqib Ali engages in and supports boycotts of businesses and organizations that contribute to the oppression of Palestinians.

5.      Maryland's ban on contracting with anyone who participates in such boycotts constitutes viewpoint discrimination that chills constitutionally-protected political advocacy in support of Palestine.  This Court should invalidate Executive Order 01.01.2017.25 *et. seq.* and enjoin enforcement of mandatory "No Boycott of Israel" clauses in Maryland bids and contracts, pursuant to the First Amendment.

## PARTIES

6.      Plaintiff Syed Saqib Ali ("Saqib Ali") is a U.S. citizen and a software engineer who earned both a bachelor's and a master's degree in Computer Science from the University of Maryland. Over the last 20 years, Saqib Ali has worked for private companies in the web development, telecommunications, defense contracting, and video game industries.  Saqib Ali was elected to and served as a member of the Maryland House of Delegates from 2007 – 2011.  Saqib Ali lives and works in Montgomery County, Maryland.

7.      Defendant Lawrence Hogan is the Governor of Maryland, with state offices located at 100 State Circle, Annapolis, MD 21401.  Defendant Hogan is sued in his official capacity, only.

8.      Defendant Brian Frosh is the Attorney General of Maryland.  The Attorney General's principal office is located at 200 St. Paul Place, Baltimore, MD 21202.  The Attorney General is the chief legal officer of the State of Maryland, with responsibility for supervising and directing the legal business of the State of Maryland and its executive agencies.  The Attorney General is also responsible for enforcing and defending the constitutionality of Maryland law.  The Attorney General is sued in his official capacity, only.

## JURISDICTION & VENUE

9.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises under federal law, namely the First and Fourteenth Amendments to the U.S. Constitution, and 42 U.S.C. § 1983.

10.     Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202.

11.     This Court has personal jurisdiction over the Defendants because they reside in this District.

12.     A substantial part of the events or omissions giving rise to the claims alleged in this Complaint occurred in this District.  Venue therefore lies in the United States District Court for the District of Maryland pursuant to 28 U.S.C. § 1391(b)(2).

## FACTUAL BACKGROUND

### The Israel – Palestine Conflict is a Fraught Issue of International Importance

13.     The relationship between Israel and Palestine is a significant international political conflict.  One of the core disputes within that conflict concerns Israel's continuing authority over and settlement of various occupied territories.

3

14.     On December 23, 2016, the United Nations Security Council, without opposition, adopted Resolution 2334. The Resolution condemned Israeli settlements in the Occupied Palestinian Territories, and reaffirmed that continuing settlements "constitute[e] a flagrant violation under international law and a major obstacle to the achievement of the two-State solution and a just, lasting and comprehensive peace." The Resolution additionally condemned Israeli violence and human rights abuses against Palestinians.

15.     A robust international movement seeks to impose economic pressure on Israel to substantially alter the country's practices and policies regarding Palestinians. Calling itself "Boycott, Divestment, and Sanctions" or "BDS," the movement seeks the peaceful end of Israeli discrimination against and maltreatment of Palestinians. The BDS movement specifically encourages economic divestment from institutions that are not in compliance with established international law related to the Israeli occupation of Palestine.

16.     The United States has historically discouraged Israeli settlements as "inconsistent with international law." Overall, however, U.S. policy strongly supports Israel, and the U.S. and Israel enjoy close political and economic relationships. These friendly relations have tended to soften or mute the United States' criticism of Israeli settlements. The United States abstained from Resolution 2334 due to its political support of Israel, and previously vetoed a similar U.N. Resolution in February 2011.

17.     The merits of all perspectives in the Israel-Palestinian conflict and the U.S.'s respective political positions are robustly and publicly debated by leading politicians, academics, universities, non-profit organizations, businesses, and media organizations in the United States and around the world.

**Maryland Governor Issues an Anti-Boycott, Divestment, and Sanctions Executive Order**

18.     Because the prevailing political sentiment in the United States favors Israel, many U.S. states, private organizations, and public officials view the Palestinian-led Boycott, Divestment, and

4

Sanctions movement as a threat to Israel.  Just last week, on January 4, 2019, the United States Senate introduced S.B. 1: "The Combating BDS Act of 2019."

19.     This political climate has, in recent years, prompted local and state legislatures to consider more than a hundred bills and resolutions aimed at hindering the Boycott, Divestment, and Sanctions movement. At least twenty-five states have implemented "anti-BDS" requirements, either through legislation or executive orders.

20.     Maryland is one state to have crafted measures opposed to the Boycott, Divestment, and Sanctions movement.

21.     Between 2014 and 2017, the Maryland legislature proposed but failed to pass several anti-BDS bills.  As a result, Maryland Governor Hogan issued Executive Order 01.01.2017.25 on October 23, 2017.  The Executive Order requires applicants who submit bids for government contracts, or who enter into government contracts, to certify that they do not and will not boycott Israel.

22.     Governor Hogan, in signing Executive Order 01.01.2017.25, declared that "The shameful BDS movement seeks to undercut those rights and freedoms, using economic discrimination and fear, by boycotting Israeli companies and prohibiting them from doing business in the United States."  In a press release, the Governor's Office said that "The executive order further strengthens Maryland's opposition to the Boycott, Divestment, and Sanctions (BDS) movement, a discriminatory campaign designed to undermine global trade with Israel."[1]

23.     Maryland law now prohibits all executive agencies from receiving bids from or contracting with any counterparty that boycotts Israel.

---

[1] *Governor Larry Hogan Signs Executive Order Strengthening Maryland's Opposition to BDS Movement Against Israel*, Office of Governor Larry Hogan (October 23, 2017), available at https://governor.maryland.gov/2017/10/23/governor-larry-hogan-signs-executive-order-strengthening-marylands-opposition-to-bds-movement-against-israel/.

24.     Specifically, Executive Order 01.01.2017.25(B) provides:

> "Executive agencies may not execute a procurement contract with a business
> entity unless it certifies, in writing when the bid is submitted or the contract is
> renewed, that:
>
>    1. it is not engaging in a boycott of Israel; and
>
>    2. it will, for the duration of its contractual obligations, refrain from a
>       boycott of Israel."

25.     The Executive Order defines "Boycott of Israel" to include "the termination of or refusal to transact business activities, or other actions intended to limit commercial relations, with a person or entity because of its Israeli national origin, or residence or incorporation in Israel and its territories."  Executive Order 01.01.2017.25(A)(1).

26.     The Executive Order defines "business entity" to include "any receiver, trustee, guardian, representative, fiduciary, partnership, firm, association, corporation, sole proprietorship, or company, including any bank, credit union, broker, developer, consultant, contractor, supplier, or vendor, individually or in any combination, that has submitted a bid or proposal for, has been selected to engage in, or is engaged in providing goods or services to the State.   Executive Order 01.01.2017.25(A)(2).

27.     To comply with the Executive Order's mandate, executive agencies and public entities promulgating government contracts and requests for bid proposals have started including mandatory "No Boycott of Israel" language in their boilerplate terms.

28.     Pursuant to Executive Order 01.01.2017.25(A)(2), Maryland executive agencies' solicitation and invitation for bids documents now contain this paragraph, "Prohibiting Discriminatory Boycotts of Israel."

> In preparing its bid/proposal on this project, the Bidder/Offeror has considered all
> bid/proposals submitted from qualified, potential subcontractors and suppliers, and has not,
> in the solicitation, selection, or commercial treatment of any subcontractor, vendor, or
> supplier, refused to transact or terminated business activities, or taken other actions intended
> to limit commercial relations, with a person or entity on the basis of Israeli national origin, or

residence or incorporation in Israel and its territories. The Bidder/Offeror also has not retaliated against any person or other entity for reporting such refusal, termination, or commercially limiting actions. Without limiting any other provision of the solicitation for bid/proposals for this project, it is understood and agreed that, if this certification is false, such false certification will constitute grounds for the State to reject the bid/proposal submitted by the Bidder/Offeror on this project, and terminate any contract awarded based on the bid/proposal.

**Experienced Computer Scientist and Former Maryland State Representative Barred From Bidding On Web Development Contracts**

29.    Plaintiff Saqib Ali is a U.S. citizen and computer software engineer residing in North Potomac, Maryland.  Saqib Ali earned both a bachelor's and a master's degree in Computer Science from the University of Maryland.

30.    Over the last 20 years, Saqib Ali has worked for private companies in the web development, telecommunications, defense contracting, and video game industries.

31.    Saqib Ali has extensive software engineering experience in the private sector, including experience designing, developing, testing, deploying and maintaining complex software systems for government contracts for the US Department of Defense.

32.    Saqib Ali was elected to and served as a member of the Maryland House of Delegates from 2007 – 2011.

33.    As a child, Saqib Ali's parents educated him on the suffering of the Palestinian population under Israeli occupation.  As he watched television coverage of violence perpetuated by Israeli soldiers against Palestinian teens, Saqib Ali resolved to support Palestinians' human rights.

34.    As an adult, Saqib Ali has dedicated himself to education and advocacy regarding the plight of the Palestinian people.  Saqib Ali works to enlist as many members of the public as possible in joining him in non-violent opposition to Israel's maltreatment of Palestinians.

35.    Personally, Saqib Ali refuses to purchase Sabra hummus or SodaStream products, which have ties to Israel and its occupation of Palestine.  He also advocates for others to join the BDS movement, and monitors current events in order to identify and promote specific BDS actions.

36.     To that end, Saqib Ali has led public demonstrations, written op-eds, lobbied elected officials, testified regarding the effects of proposed legislation, and actively engaged in Palestine-related dialogue on social media.

37.     In 2014, Saqib Ali organized "Freedom2Boycott in Maryland," a coalition of statewide grassroots activists opposed to Maryland's legislative proposals targeting the BDS movement. The Freedom2Boycott efforts mobilized support against, and ultimately helped defeat, Maryland's anti-BDS legislative proposals.

38.     Following Governor Hogan's implementation of Executive Order 01.01.2017.25, Saqib Ali has tracked the proliferation of "No Boycott of Israel" clauses in Maryland bid solicitations and contracts.

39.     As an experienced software engineer, Saqib Ali also tracks Maryland bid solicitations for software and web development services. Saqib Ali is experienced and qualified to perform the requested software services. Saqib intends to submit bids for state contracts for which he is qualified.

40.     For example, Maryland recently requested bids on two projects for which Saqib Ali is generally qualified. The first, Bid Solicitation # MDD8031042042 from the Maryland Office of the Chief Actuary, requests the creation of software to evaluate life insurance policies. The second, Bid Solicitation # MDD2631042358 from the Maryland Department of Aging, requests support for a software program related to administering Maryland's Medicaid services. Saqib Ali possesses the necessary skills to create or support both of these software services.

41.     Nevertheless, Saqib Ali is barred from even submitting a bid on these, or any other software engineering project, due to the bids' inclusion of "No Boycott of Israel" certifications required by Executive Order 01.01.2017.25. These and all other "No Boycott of Israel" boilerplate certifications contained in solicitations by Maryland agencies appear at the instruction of the Governor and Attorney General.

8

42.     Saqib Ali cannot certify in good faith that he has not "refused to transact or terminated business activities, or taken other actions intended to limit commercial relations, with a person or entity on the basis of Israeli national origin, or residence or incorporation in Israel and its territories." Saqib Ali is thus barred from even submitting bids for any state contracts.

43.     Saqib Ali seeks the right to submit bids for contracts with Maryland agencies, without certifying that he does not boycott Israel.  In order to remove the certification requirement, Saqib seeks to invalidate Executive Order 01.01.2017.25 as inconsistent with the First Amendment.

**FIRST CAUSE OF ACTION**
**VIOLATION OF THE FIRST AND FOURTEENTH AMENDMENTS TO THE U.S CONSTITUTION (**42 U.S.C. § 1983)

44.     Plaintiff incorporates all of the above paragraphs as though fully set forth herein.

45.     The First Amendment provides: "Congress shall make no law … abridging the freedom of speech, or of the press."  U.S. CONST. Amend. I.

46.     The First Amendment binds the State of Maryland pursuant to the incorporation doctrine of the Fourteenth Amendment.

47.     Political speech on issues of great national and international importance is central to the purposes of the First Amendment.  Speech and advocacy related to the Israel – Palestine conflict is core political speech on a matter of public concern entitled to the highest levels of constitutional protection.

48.     Economic boycotts for the purposes of bringing about political change are entrenched in American history, beginning with colonial boycotts on British tea.  Later, the Civil Rights Movement relied heavily on boycotts to combat racism and spur societal change.  The Supreme Court has recognized that non-violent boycotts intended to advance civil rights constitute "form[s] of speech or conduct that [are] ordinarily entitled to protection under the First and Fourteenth Amendments." *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886 (1982).

49.     The First Amendment protects the rights of speakers to call for and participate in economic boycotts as a means of amplifying their message. Joining voices together to participate in and call for political boycotts is protected association under the First Amendment.

50.     Plaintiff has standing to challenge the inclusion of the discriminatory and unconstitutional "No Boycott of Israel" terms in bid solicitations and contracts, which prevents him from even submitting bids to provide software engineering services to the state. *See, e.g., Northeastern Florida Chapter of the Assoc. Gen'l Contractors of Amer. v. City of Jacksonville*, 508 U.S. 656, 666 (1993).

51.     Executive Order 01.01.2017.25 and the mandated "No Boycott of Israel" certifications in Maryland bids and contracts each constitute viewpoint discrimination, because they only bar speech and expression against Israel, and not speech or expression in favor of Israel or against Palestine.

52.     Executive Order 01.01.2017.25 and the mandated "No Boycott of Israel" certifications in Maryland bids and contracts each constitute content-specific restrictions on speech, because they single out boycotts of Israel for disfavored treatment.

53.     Executive Order 01.01.2017.25 and the mandated "No Boycott of Israel" certifications in Maryland bids and contracts each constitute speaker-specific restrictions on speech, because they single out government contractors who advocate for Palestine and against Israel as specific speakers who warrant disfavored treatment.

54.     Executive Order 01.01.2017.25 and the mandated "No Boycott of Israel" certifications in Maryland bids and contracts each constitute impermissible State attempts to impose conditions on an independent contractor on a basis that infringes constitutionally protected freedom of speech.

55.     Executive Order 01.01.2017.25 and the mandated "No Boycott of Israel" certifications in Maryland bids and contracts constitute impermissible State attempts to impose an

ideological litmus test or compel speech related to government contractors' political beliefs, associations, and expressions.

56.     Executive Order 01.01.2017.25 and the mandated "No Boycott of Israel" certifications in Maryland bids and contracts each impose a prior restraint on speech, by requiring speakers to certify in advance that they do not and will not engage in a boycott of Israel.

57.     Executive Order 01.01.2017.25 and the mandated "No Boycott of Israel" certifications in Maryland bids and contracts are each substantially overbroad.

58.     Executive Order 01.01.2017.25 and the mandated "No Boycott of Israel" certifications in Maryland bids and contracts are each void for vagueness.

59.     Executive Order 01.01.2017.25 and the mandated "No Boycott of Israel" certifications in Maryland bids and contracts operate to chill the exercise of constitutionally protected speech and associations.

60.     The Maryland Governor and Maryland Attorney General each lack a compelling or legitimate governmental interest in the enforcement of Executive Order 01.01.2017.25 and the mandated "No Boycott of Israel" certifications in Maryland bids and contracts.

61.     Maryland contracts for software engineering services bear no relationship, rational or otherwise, with the contractors' advocacy for or participations in boycotts of Israel.

62.     Enforcement of Executive Order 01.01.2017.25 and the mandated "No Boycott of Israel" certifications in Maryland bids and contracts does not constitute the least-restrictive means of fulfilling any state interest.

63.     Executive Order 01.01.2017.25 and the mandated "No Boycott of Israel" certifications in Maryland bids and contracts are facially unconstitutional under the First Amendment and cannot be enforced against anyone by the Maryland Attorney General.

64.     Executive Order 01.01.2017.25 and the mandated "No Boycott of Israel" certifications in Maryland bids and contracts, as implemented by Maryland executive agencies at the direction of the Governor, is unconstitutional as applied to Plaintiff and his software engineering services.

65.     Absent an injunction, Plaintiff will suffer irreparable harm because he will be barred by state law and contract from engaging in protected First Amendment speech and association on a matter of public concern.  Plaintiff will be chilled in his personal capacity to advocate for Palestinian rights and submit bids and contract with the state on equal terms to those who do not boycott Israel.

66.     If Defendants are not enjoined from enforcing Executive Order 01.01.2017.25 and from including the "No Boycott of Israel" clause in state contracts, Plaintiff and all advocates for Palestine will be effectively prohibited from entering into any agreement with the State of Maryland unless they give up their constitutionally-protected views.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the Court enter the following relief:

A.     Declare Executive Order 01.01.2017.25 unconstitutional and unenforceable;

B.     Issue judgment in Plaintiff's favor and against Defendants on all causes of action alleged herein pursuant to 42 U.S.C. § 1983 and the First and Fourteenth Amendments to the U.S. Constitution;

C.     Grant Plaintiff an injunction striking the "No Boycott of Israel" certification from any bid proposal he submits to a Maryland agency governed by Executive Order 01.01.2017.25;

D.     Enter an injunction against Defendants' inclusion of "No Boycott of Israel" provisions in any state contract pursuant to Executive Order 01.01.2017.25;

E.     Enter an injunction against Defendants' continuing enforcement of Executive Order
       01.01.2017.25;

F.     Declare void any "No Boycott of Israel" certification pursuant to Executive Order
       01.01.2017.25 that now exists in any and all contracts between Maryland public entities
       and private companies or persons.

G.     Award Plaintiff his reasonable costs and attorney's fees pursuant to 42 U.S.C. § 1988;
       and,

H.     Grant such other and further relief as the Court may deem to be just and proper.

### JURY DEMAND

NOW COME Plaintiff, by and through her undersigned counsel, and hereby demands trial by jury of the above-referenced causes of actions.

Dated:  January 9, 2018

**CAIR LEGAL DEFENSE FUND**

*/s/ Lena F. Masri*

Lena F. Masri (D. Md. # 20251)
    lmasri@cair.com
Gadeir I. Abbas (D. Md. # 20257) *
    gabbas@cair.com
Carolyn M. Homer (D. Md. # 20409)
    chomer@cair.com
453 New Jersey Ave., SE
Washington, DC 20003
Phone: (202) 742-6420
Fax:     (202) 488-0833

*\* Licensed in VA, not in D.C.*
*Practice limited to federal matters*

**EXHIBIT A**

 

## The State of Maryland
### Executive Department

EXECUTIVE ORDER
01.01.2017.25

<u>Prohibiting Discriminatory Boycotts of Israel in State Procurement</u>

| | |
|---|---|
| WHEREAS, | The State of Maryland and Israel have executed a Declaration of Cooperation that has, for more than two decades, enabled the successful exchange of commerce, culture, technology, tourism, trade, economic development, scholarly inquiry, and academic research; |
| WHEREAS, | These accomplishments have helped generate millions of dollars of investment and substantial job creation in the State; |
| WHEREAS, | The cooperation between Israel and the State has produced notable achievements in medicine, healthcare, and biotechnology that have benefitted the State; |
| WHEREAS, | The collaboration between Israel and the State has produced important enhancements to the cyber, homeland, and national security of the State; |
| WHEREAS, | Boycotts of people or entities because of their Israeli national origin, or residence or incorporation in Israel and its territories, undermines the Declaration of Cooperation; |
| WHEREAS, | It is the public policy of the United States, as enshrined in several federal laws, to oppose certain boycotts of Israel; |
| WHEREAS, | The termination of or refusal to transact business activities with people or entities because of their Israeli national origin, or residence or incorporation in Israel and its territories, is not a commercial decision made for business or economic reasons; |
| WHEREAS, | Business entities that employ such unsound business practices therefore have impaired commercial viability and provide less job security to their employees; |

WHEREAS,         Such business entities pose undue risks as contracting partners and may not provide the best possible products or services to the State;

WHEREAS,         The State has a longstanding and broad policy to refrain from contracting with business entities that unlawfully discriminate in the solicitation, selection, hiring, or commercial treatment of vendors, supplies, subcontractors, or commercial customers;

WHEREAS,         Boycotts based on religion, national origin, ethnicity, or residence are discriminatory; and

WHEREAS,         Contracting with business entities that discriminate makes the State a passive participant in private-sector commercial discrimination;

NOW, THEREFORE,  I, LAWRENCE J. HOGAN, JR., GOVERNOR OF THE STATE OF MARYLAND, BY VIRTUE OF THE AUTHORITY VESTED IN ME BY THE CONSTITUTION AND LAWS OF MARYLAND, HEREBY PROCLAIM THE FOLLOWING EXECUTIVE ORDER, EFFECTIVE IMMEDIATELY:

A.    The following words have the meanings indicated:

1.    "Boycott of Israel" means the termination of or refusal to transact business activities, or other actions intended to limit commercial relations, with a person or entity because of its Israeli national origin, or residence or incorporation in Israel and its territories. "Boycott of Israel" does not include actions taken:

      i.   that are not commercial in nature;

      ii.  for business or economic reasons;

      iii.  because of the specific conduct of the person or entity;

      iv.  against a public or governmental entity; or

      v.   that are forbidden by the United States pursuant to 50 U.S.C. § 4607.

2.    "Business entity" means any receiver, trustee, guardian, representative, fiduciary, partnership, firm, association, corporation, sole proprietorship, or company, including any bank, credit union, broker, developer, consultant, contractor, supplier, or vendor, individually or in any combination, that has submitted a

2

bid or proposal for, has been selected to engage in, or is engaged in providing goods or services to the State.

3. "Commercial relations" means a business entity's conduct of business, and the terms and conditions by which business is transacted, with a vendor, supplier, subcontractor, or other business entity.

4. "Contract" means an agreement by or on behalf of the State for a business entity to sell or lease supplies or goods, or to provide services, to the State in return for a fee, or any other form of compensation to be paid or provided by the State.

5. "Executive agency" means a State department, agency, authority, board, or instrumentality that is controlled by the Governor.

6. "Services" includes construction, real-estate development, financial management, insurance, and professional support.

B. Executive agencies may not execute a procurement contract with a business entity unless it certifies, in writing when the bid is submitted or the contract is renewed, that:

1. it is not engaging in a boycott of Israel; and

2. it will, for the duration of its contractual obligations, refrain from a boycott of Israel.

C. All requests for bids or proposals issued for contracts with Executive agencies shall include the text of the following certification to be completed by the bidder: "The undersigned bidder hereby certifies and agrees that the following information is correct: In preparing its bid on this project, the bidder has considered all proposals submitted from qualified, potential subcontractors and suppliers, and has not, in the solicitation, selection, or commercial treatment of any subcontractor, vendor, or supplier, refused to transact or terminated business activities, or taken other actions intended to limit commercial relations, with a person or entity on the basis of Israeli national origin, or residence or incorporation in Israel and its territories. The bidder also has not retaliated against any person or other entity for reporting such refusal, termination, or commercially limiting actions. Without limiting any other provision of the solicitation for bids for this project, it is understood and agreed that, if this certification is false, such false certification will

3

constitute grounds for the State to reject the bid submitted by the bidder on this project, and terminate any contract awarded based on the bid."

D.     All Executive agencies shall implement this Executive Order in a manner consistent with the important public policy favoring advancement of women- and minority-owned businesses as set forth in Title 14, Subtitle 3, of the State Finance & Procurement Article of the Code of Maryland and related regulations.

E.     All Executive agencies shall implement this Executive Order in a manner that is consistent with all applicable statutes and regulations. Nothing in this Executive Order shall operate to contravene any State or federal law or to affect the State's receipt of federal funding.

F.     If any provision of this Executive Order or its application to any person, entity, or circumstance is held invalid by any court of competent jurisdiction, all other provisions or applications of the Executive Order shall remain in effect to the extent possible without the invalid provision or application. To achieve this purpose, the provisions of this Executive Order are severable.

GIVEN Under My Hand and the Great Seal of the State of Maryland, in the City of Annapolis, this 23rd Day of October 2017.

Lawrence J. Hogan, Jr.
Governor

ATTEST:

John C. Wobensmith
Secretary of State

4