**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| SAQIB ALI, | * | |
| *Plaintiff*, | * | |
| v. | * | No. 1:19-CV-00078-BPG |
| LAWRENCE HOGAN, *et al.*, | * | |
| *Defendants*. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM IN SUPPORT OF
ATTORNEY GENERAL FROSH'S MOTION TO DISMISS**

BRIAN E. FROSH
Attorney General of Maryland

ADAM D. SNYDER
Assistant Attorney General
Bar No. 25723
Office of the Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland  21202
(410) 576-6398
(410) 576-6955 (facsimile)
asnyder@oag.state.md.us

Attorneys for Defendant Brian E. Frosh,
Attorney General of Maryland

**TABLE OF CONTENTS**

Page

STATEMENT OF FACTS ................................................................................................ 1

ARGUMENT.................................................................................................................... 2

I. STANDARD OF REVIEW ....................................................................................... 2

II. MR. ALI'S CLAIM AGAINST THE ATTORNEY GENERAL IS BARRED BY THE
ELEVENTH AMENDMENT TO THE UNITED STATES CONSTITUTION. ......................... 2

CONCLUSION ................................................................................................................ 9

## TABLE OF AUTHORITIES

**Page**

**Cases**

*1st Westco. Corp. v. School Dist. of Philadelphia*,
   6 F.3d 108 (3d Cir. 1993) ............................................................................................... 8

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................................. 2

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................................ 2

*Board of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356 (2001) .......................................... 3

*Children's Healthcare is a Legal Duty, Inc. v. Deters*,
   92 F.3d 1412 (6th Cir. 1996) ......................................................................................... 6

*College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*,
   527 U.S. 666 (1999) ....................................................................................................... 3

*Ex parte Young*, 209 U.S. 123 (1908) ........................................................................ passim

*Giarratano v. Johnson*, 521 F.3d 298 (4th Cir. 2008) ......................................................... 2

*Green v. Mansour*, 474 U.S. 64 (1985) ............................................................................... 4

*Harris v. McDonnell*, 988 F. Supp. 2d 603 (W.D. Va. 2013) ............................................ 8

*Hutto v. South Carolina Retirement System*, 773 F.3d 536 (4th Cir. 2014) ....................... 6

*In re Creative Goldsmiths of Washington, D.C., Inc., Debtor*,
   119 F.3d 1140 (4th Cir. 1997) ....................................................................................... 3

*Jordahl v. Brnovich*, 336 F. Supp. 3d 1016 (D. Ariz. 2018) ............................................... 9

*Kelley v. Metropolitan County Bd. of Educ.*,
   836 F.2d 986 (6th Cir. 1987) ......................................................................................... 8

*Long v. Van de Kamp*, 961 F.2d 151 (9th Cir. 1992) ......................................................... 8

*Lowery v. Prince George's County, Md.*, 960 F. Supp. 952 (D. Md. 1997) ....................... 3

*McBurney v. Cuccinelli*, 616 F.3d 393 (4th Cir. 2010) .............................................. passim

*Okpalobi v. Foster*, 244 F.3d 405 (5th Cir. 2001) .............................................................. 8

*Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984) ...... 3

*Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908 (9th Cir. 2004) ...... 8

*Quern v. Jordan*, 440 U.S. 332 (1979) ...... 4

*Seminole Tribe of Florida v. Florida*, 517 U.S. 44 (1996) ...... 3, 4

*South Carolina Wildlife Fed'n v. Limehouse*, 549 F.3d 324 (4th Cir. 2008) ...... 5, 6, 7

*State ex rel. Atty. Gen. v. Burning Tree Club, Inc.*, 301 Md. 9 (1984) ...... 7

*Wag More Dogs, LLC v. Cozart*, 680 F.3d 359 (4th Cir. 2012) ...... 2, 7

*Waste Management Holdings, Inc. v. Gilmore*, 252 F.3d 316 (4th Cir. 2001) ...... 5, 6

*Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989) ...... 3

**Constitutional Provisions**

U.S. Const. amend. XI ...... passim

**Statutes**

42 U.S.C. § 1983 ...... 5

Md. Code Ann., State Fin. & Proc. § 16-203(a)(12) ...... 6

Md. Code Ann., State Fin. & Proc. § 19-101(a) ...... 7

Md. Code Ann., State Gov't § 6-106(a) ...... 8

Md. Code Ann., State Gov't § 6-106(b) ...... 8

Md. Code Ann., State Gov't § 12-103(2) ...... 4

## MEMORANDUM IN SUPPORT OF
## ATTORNEY GENERAL FROSH'S MOTION TO DISMISS

This case involves a First Amendment challenge to a gubernatorial executive order prohibiting State agencies from contracting with "business entities" that engage in a boycott of Israel.  *See* Executive Order No. 01.01.2017.25, "Prohibiting Discriminatory Boycotts of Israel in State Procurement" ("Executive Order").[1]  The plaintiff, Mr. Saqib Ali, seeks a judgment declaring the Executive Order unconstitutional and an order enjoining the Governor and the Attorney General from enforcing it.  The Governor, by separate motion, asks the Court to dismiss the complaint on multiple grounds, including that Mr. Ali lacks standing because the Executive Order applies only to "business entities" and not to individuals.  The Attorney General, for his part, moves to dismiss the complaint on the grounds that it is barred by Eleventh Amendment immunity because the Attorney General does not have the "special relation" to the Executive Order necessary to allow the suit to proceed against him under *Ex Parte Young*, 209 U.S 123 (1908).  *See McBurney v. Cuccinelli*, 616 F.3d 393, 399 (4th Cir. 2010).

### STATEMENT OF FACTS

The Governor's motion to dismiss describes the allegations of the complaint and the larger factual and legal context of this case and others like it.  For purposes of this motion, the salient facts, as alleged by Mr. Ali, are that the Governor issued the Executive Order and that the Attorney General is responsible for "supervising and directing the legal

---

[1] The Executive Order is attached to the complaint in this matter (ECF 1) and to the Memorandum in Support of Governor Hogan's Motion to Dismiss.

business of the State of Maryland and its executive agencies" and "enforcing and defending the constitutionality of Maryland law." Compl. (ECF 1) at 2-3 (¶¶ 3, 8). The complaint also alleges that Maryland agencies include "'No Boycott of Israel' boilerplate certifications" in their procurement solicitations and that they do so "at the instruction of the Governor and Attorney General." *Id.* at 8 (¶ 41). The complaint contains no further allegations about the Attorney General's involvement with the Executive Order.

## ARGUMENT

### I.  STANDARD OF REVIEW

To survive a motion to dismiss for failure to state a claim on which relief can be granted, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although the Court is required to "'take the facts in the light most favorable to the plaintiff,'" the Court "need not accept legal conclusions couched as facts or 'unwarranted inferences, unreasonable conclusions, or arguments.'" *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012) (quoting *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (internal citation omitted)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679.

### II.  MR. ALI'S CLAIM AGAINST THE ATTORNEY GENERAL IS BARRED BY THE ELEVENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

Mr. Ali's claim against the Attorney General should be dismissed because State officials like the Attorney General are not susceptible to suit in federal court without a valid

waiver or abrogation of its sovereign immunity.  *See* U.S. Const. amend. XI; *Board of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001).  The Eleventh Amendment applies to the State and its agencies, *Pennhurst State Sch. & Hosp. v. Haldeman*, 465 U.S. 89, 100 (1984), and a suit against a state official in his official capacity "is no different from a suit against the State itself."  *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *see* Compl. at 3 (¶¶ 7, 8).  Accordingly, the Attorney General is unquestionably protected by Eleventh Amendment immunity.  *See, e.g., In re Creative Goldsmiths of Washington, D.C., Inc.*, 119 F.3d 1140 (4th Cir. 1997) (treating Maryland State Comptroller as equivalent to the State of Maryland and dismissing the action on Eleventh Amendment grounds).

The Eleventh Amendment bars a private litigant's suit against a State, its agencies, and officials, regardless of the type of relief sought, *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 58 (1996), unless either (1) the State has expressly waived its immunity by "'clear declaration,'" *College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 676 (1999) (citations omitted), or (2) Congress has "unequivocally expressed its intent to abrogate the immunity" in a statute "passed pursuant to a constitutional provision granting Congress the power to abrogate."  *Seminole Tribe*, 517 U.S. at 55, 59 (internal quotation marks and brackets omitted).  The State of Maryland has not waived its Eleventh Amendment immunity or the immunity of its agencies, officials, and employees.  *See* Md. Code Ann., State Gov't § 12-103(2); *see also In re Creative Goldsmiths*, 119 F.3d at 1149; *Lowery v. Prince George's County, Md.*, 960 F. Supp. 952, 954 n.4 (D. Md. 1997).  Nor does the complaint here assert any statute in which Congress

3

has expressed any intent to abrogate the States' immunity. *See Quern v. Jordan*, 440 U.S. 332, 345 (1979) (42 U.S.C. § 1983 does not abrogate immunity of States). Therefore, because Eleventh Amendment immunity has neither been waived nor abrogated here, Mr. Ali's claim against the Attorney General is barred.

Nor may his claim against the Attorney General be maintained under the exception to Eleventh Amendment immunity recognized in *Ex parte Young*, 209 U.S. 123 (1908). *Ex parte Young* offers a "narrow exception," *Seminole Tribe*, 517 U.S. at 76, one that authorizes a private suit against a State official for "prospective equitable relief to prevent a continuing violation of federal law." *Green v. Mansour*, 474 U.S. 64, 68 (1985). The *Ex parte Young* exception permits suit only against an official who has a "special relation" to the enforcement of the challenged statute or government action. *Ex parte Young*, 209 U.S. at 157 (citation omitted); *McBurney*, 616 F.3d at 399. And even officials who have a "special relation" to enforcement of the challenged law are not subject to suit under *Ex parte Young* unless the officials "threaten and are about to commence proceedings" to enforce the law. *Ex parte Young*, 209 U.S. at 155-56; *see also McBurney*, 616 F.3d at 402.

Mr. Ali's complaint contains two allegations about the Attorney General's connection with the challenged Executive Order, neither of which justifies the application of *Ex parte Young*. First, he alleges that the Attorney General has a general responsibility for "supervising and directing the legal business of the State of Maryland and its executive agencies" and "enforcing and defending the constitutionality of Maryland law." Compl. at 3 (¶ 8). The Fourth Circuit has made clear, however, that a suit may not proceed under *Ex parte Young* "when an official merely possesses '[g]eneral authority to enforce the laws of

4

the state.'" *McBurney*, 616 F.3d at 399 (quoting *South Carolina Wildlife Fed'n v. Limehouse*, 549 F.3d 324, 333 (4th Cir. 2008)). That is why, in *McBurney*, the Fourth Circuit upheld the application of Eleventh Amendment immunity to the Attorney General of Virginia despite allegations about the Attorney General's duties that are almost identical to those that Mr. Ali makes here: "'providing legal advice and representation to the Governor and executive agencies, state boards and commissions, and institutions of higher education; defending the constitutionality of state laws when they are challenged in court; and enforcing state laws that protect businesses and consumers.'" *Id.*

Nor is it enough that the Attorney General's general authority to enforce state laws applies within the context of Maryland procurement law. Although Mr. Ali has not alleged as much in his complaint, the Attorney General has the authority, for example, to seek debarment of vendors who violate Maryland's procurement laws in certain ways—including, for example, those who violate the State's Commercial Nondiscrimination Policy, *see* Md. Code Ann., State Fin. & Proc. § 16-203(a)(12)[2]—but the Attorney General's authority there is simply a specific application of his general authority to defend and enforce the laws of the State, which is not sufficient to provide this Court with jurisdiction under *Ex parte Young*. *Waste Management Holdings, Inc. v. Gilmore*, 252 F.3d 316, 331 (4th Cir. 2001) ("'General authority to enforce the laws of the state is not sufficient to make government officials the proper parties to litigation challenging the

---

[2] The State's Commercial Nondiscrimination Policy prohibits vendors from discriminating on the basis of, among other things, "religion, ancestry or national origin." State Fin. & Proc. § 19-101(a).

5

law.'" (quoting *Children's Healthcare is a Legal Duty, Inc. v. Deters*, 92 F.3d 1412, 1416 (6th Cir. 1996)).

Instead, "*Ex parte Young* requires a 'special relation' between the state officer sued and the challenged statute to avoid the Eleventh Amendment's bar." *Id*. As the Fourth Circuit has applied it, the "special relation" requirement under *Ex parte Young* "'has served as a measure of proximity to and responsibility for the challenged state action.'" *McBurney*, 616 F.3d at 400-01 (quoting *Limehouse*, 549 F.3d at 332-33). This requirement both ensures "'that a federal injunction will be effective with respect to the underlying claim,'" *id*., and "prevents parties from circumventing a State's Eleventh Amendment immunity." *Hutto v. South Carolina Retirement System*, 773 F.3d 536, 550 (4th Cir. 2014).

> As the Court explained in *Ex parte Young*, if the "constitutionality of every act passed by the legislature could be tested by a suit against the governor and attorney general, based upon the theory that the former, as the executive of the State, was, in a general sense, charged with the execution of all its laws, and the latter, as attorney general, might represent the state in litigation involving the enforcement of its statutes," it would eviscerate "the fundamental principle that [States] cannot, without their assent, be brought into any court at the suit of private persons."

*Id.* (quoting *Ex parte Young*, 209 U.S. at 157)).

Here, the only way in which Mr. Ali's complaint may be read as even alleging that the Attorney General has a "special relation" to enforcement of the Executive Order is that the "'No Boycott of Israel' boilerplate certifications contained in solicitations by Maryland agencies appear at the *instruction* of the Governor and Attorney General." Compl. at 8 (¶ 41 (emphasis added)). This one-word allegation is insufficient to establish a "special relation" because, as a matter of law, the Attorney General does not have the authority to

6

"instruct" Maryland agencies to do anything. As the chief lawyer for the State, the Attorney General has "general charge of the legal business of the State" and is the "legal adviser and representative" of State agencies and officials. Md. Code Ann., State Gov't § 6-106(a), (b); *see generally State ex rel. Atty. Gen. v. Burning Tree Club, Inc*., 301 Md. 9, 34 (1984). In that capacity, he provides legal advice to agencies, but he does not "instruct," direct, or order State agencies to procure goods and services in any particular way. Mr. Ali cannot supersede those statutory limitations on the Attorney General's role simply by alleging that it is so. *See Wag More Dogs*, 680 F.3d at 365 (stating that courts "need not accept legal conclusions couched as facts").

The Attorney General's limited role with respect to gubernatorial executive orders bears little resemblance to those cases where officials have been found to have a "special relation" sufficient to allow a suit to go forward under *Ex parte Young*. In *Ex parte Young* itself, the Minnesota Attorney General was deemed to have the requisite "special relation" because he not only had specific authority to enforce certain railroad rate provisions, but he actually had "commenced proceedings to enforce" them. 209 U.S. at 160. And in *Limehouse*, the Fourth Circuit concluded that the defendant state official had a "special relation" to the governmental bridge project in dispute because he was "deeply involved" in both "the preparation of the challenged [environmental documentation for the bridge]" and "the procurement of permits to proceed with construction" of it. 549 F.3d at 333. Here, by contrast, the Attorney General does not have any role in the issuance of executive orders, has no specific authority to enforce the terms of the Executive Order at issue here, and no

State agency has enforced the terms of the Executive Order against Mr. Ali by rejecting any of his bids or proposals.[3]

Finally, even if the Attorney General had a theoretical "special relation" to the Executive Order, this Court "cannot apply *Ex parte Young* because the Attorney General has not acted or threatened to act." *McBurney*, 616 F.3d at 402; *see also Okpalobi v. Foster*, 244 F.3d 405, 415 (5th Cir. 2001) ("The requirement that there be some actual or threatened enforcement action before *Young* applies has been repeatedly applied by the federal courts.") (citing *1st Westco. Corp. v. School Dist. of Philadelphia*, 6 F.3d 108, 113 (3d Cir. 1993); *Long v. Van de Kamp*, 961 F.2d 151, 152 (9th Cir. 1992); *Kelley v. Metropolitan County Bd. of Educ.*, 836 F.2d 986, 990-91 (6th Cir. 1987)). As noted above, the Supreme Court in *Ex parte Young* allowed a suit to proceed against the Minnesota Attorney General because he had already "commenced proceedings to enforce" the challenged statute. 209 U.S. at 160; *see also Harris v. McDonnell*, 988 F. Supp. 2d 603, 608 (W.D. Va. 2013) (noting the same). By contrast, the Fourth Circuit held in *McBurney* that *Ex parte Young* did not apply to the Virginia Attorney General because he had not "personally denied" the

---

[3] Mr. Ali does not allege that he has submitted any bids or proposals after issuance of the Executive Order or had any rejected. Compl. at 8-9 (¶¶ 39, 42 (alleging that Mr. Ali "intends" to submit bids but "cannot certify in good faith" that he does not participate in a boycott of Israel)). And it seems unlikely that his bids would be rejected when, as discussed in the Governor's motion to dismiss, the Executive Order applies only to "business entities" and not to individuals, like Mr. Ali. *See* Memorandum in Support of Governor Hogan's Motion to Dismiss at 7-9. For this same reason, Mr. Ali has not established standing to bring this suit. *See, e.g.*, *Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 919 (9th Cir. 2004) (observing that a "common denominator" of the standing inquiry and whether *Ex parte Young* applies is whether the defendant government officials are "proper defendants in the suit").

appellant's public records requests or "advised any other agencies to do so." 616 F.3d at 402. Similarly, Mr. Ali does not allege that the Attorney General has rejected any of Mr. Ali's bids or proposals or threatened to do so, or even advised State agencies to do so. "Because the Attoney General has not enforced, threatened to enforce, or advised other agencies to enforce [the Executive Order] against [Mr. Ali], the *Ex parte Young* fiction cannot apply."[4]  *McBurney*, 616 F.3d at 402.

## CONCLUSION

The Eleventh Amendment bars Mr. Ali's complaint against the Attorney General.

Respectfully submitted,

BRIAN E. FROSH
Attorney General of Maryland

/s/ Adam D. Snyder

_____

ADAM D. SNYDER
Assistant Attorney General
Bar No. 25723
Office of the Attorney General
200 Saint Paul Place, 20th Floor

---

[4] In *Jordahl v. Brnovich*, 336 F. Supp. 3d 1016 (D. Ariz. 2018), the Arizona district court declined to dismiss the Attorney General from another anti-Israel boycott case, but it did so because, when the plaintiff declined to sign the certification required by the Arizona statute, the relevant agency did not renew the plaintiff's contract and refused to pay the plaintiff for "services rendered," *id.* at 1033, "presumably" out of fear of prosecution by the Attorney General, *id.* at 1036. The district court thus did not conclude that the Attorney General's enforcement authority was sufficient, on its own, to justify application of *Ex parte Young*. Only when viewed "together with the actions of the [agency]" was his authority sufficient to "form a clear and plausible causal chain resulting in Plaintiff's alleged constitutional injuries." *Id.* Even assuming that the district court's analysis in *Jordahl* is consistent with Fourth Circuit precedent, *see McBurney*, 616 F.3d at 401-02, its conclusion would not govern this case, where Mr. Ali does not allege that any agency has stopped paying him for work already completed or rejected his bids or proposals.

9

                                      Baltimore, Maryland  21202
                                      (410) 576-6398
                                      (410) 576-6955 (facsimile)
                                      asnyder@oag.state.md.us

                                      Attorneys for Defendant Brian E. Frosh,
                                      Attorney General of Maryland