# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

SAQIB ALI,                         *

     *Plaintiff*,                   *

     v.                             *   No. 1:19-CV-00078-CCB

LAWRENCE HOGAN, *et al.*,           *

     *Defendants*.                  *

    *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

## ATTORNEY GENERAL FROSH'S REPLY
## IN SUPPORT OF MOTION TO DISMISS

In his complaint, Mr. Ali alleged only the most general connections between the Attorney General and the executive order at issue, none of which—as the Attorney General demonstrated in the memorandum accompanying his motion to dismiss—suffices to establish the "special relation" that *Ex parte Young* requires. In his opposition to that motion, Mr. Ali shifts gears and argues that the Attorney General has the necessary "special relation" because he has the authority to initiate debarment procedures against vendors who violate Maryland's procurement laws, including its commercial non-discrimination measures, of which the Executive Order is but "one form." Plaintiff's Combined Opposition to Defendants' Motions to Dismiss ("Opp.") at 8, 15. Mr. Ali's newfound reliance on the Attorney General's debarment role does not provide this Court with subject matter jurisdiction under *Ex parte Young*.

I.   **THE ATTORNEY GENERAL'S DEBARMENT ROLE DOES NOT GIVE HIM A "SPECIAL RELATION" TO ENFORCEMENT OF THE EXECUTIVE ORDER SUFFICIENT TO DEFEAT SOVEREIGN IMMUNITY UNDER *EX PARTE YOUNG*.**

The Attorney General's debarment authority does not provide the "special relation" for enforcing the Executive Order for several reasons.  First, debarment is not a means of enforcing the Executive Order.  The Executive Order is enforced by the agencies that administer their own procurement processes, and those agencies enforce it by disqualifying corporate bidders that fail to certify that they are not discriminating in the way prohibited by the Order.  Had Mr. Ali submitted the bids he alleged an interest in submitting, Compl. (ECF-1) at 8 (¶40), the Executive Order might have been enforced by the Maryland Insurance Administration or the Department of Aging, but not the Attorney General.

Second, debarment is an entirely separate process that is at least one step removed from any violation of the procurement law.  A debarment action may be initiated only after the vendor has been convicted of a qualifying offense, Md. Code Ann., St. Fin. & Proc., §§ 16-202, 16-203(a)(1)-(7), or "found" to have violated certain provisions by a court or through an adjudicated contested case hearing, *id.* § 16-203(a)(8)-(12).  Debarment proceedings thus do not enforce the underlying procurement law; they debar a vendor who has already been investigated and adjudicated as having violated the procurement law.  And with respect to the provision that Mr. Ali identifies—*id.* § 16-203(a)(12), Opp. at 8—the investigation and adjudication is performed by the Commission on Civil Rights, not the Attorney General.  *See id.* § 19-107(a).

Finally, none of the cases that Mr. Ali cites supports the application of *Ex parte Young* here.  The only Fourth Circuit case that Mr. Ali cites—*Mobil Oil Corp. v. Attorney General of Virginia*, 940 F.2d 73 (4th Cir. 1991), Opp. at 10—is a standing case; it does not mention, much less address, sovereign immunity or *Ex parte Young*.  That explains why the Fourth Circuit did not mention the case in *Waste Management Holdings, Inc. v. Gilmore*, 252 F.3d 316 (4th Cir. 2001), *South Carolina Wildlife Fed'n v. Limehouse*, 549 F.3d 324 (4th Cir. 2008), *McBurney v. Cuccinelli*, 616 F.3d 393 (4th Cir. 2010), *Hutto v. South Carolina Retirement System*, 773 F.3d 536 (4th Cir. 2014), or any of its cases applying *Ex parte Young*.

Because the standing and *Ex parte Young* inquiries both consider whether the defendant government official is a proper defendant, *Mobil* might provide helpful guidance were it not for the fact that it is substantively distinguishable from the issue before this Court.  The authority that the Attorney General of Virginia exercised in that case is categorically different from the Attorney General's authority with respect to the Executive Order here.  As other courts have pointed out, the law challenged in *Mobil* itself "granted express authority to the Attorney General to 'investigate and bring an action in the name of the Commonwealth to enjoin any violation' of the offending law."  *Falwell v. City of Lynchburg, Virginia*, 198 F. Supp. 2d 765, 784 n.19 (W.D. Va. 2002); *see also Digital Recognition Network, Inc. v. Hutchinson*, 803 F.3d 952, 962 (8th Cir. 2015) (distinguishing *Mobil* on the grounds that "the attorney general had 'an independent power to enforce'" the challenged statute); *Okpalobi v. Foster*, 244 F.3d 405, 428 n.38 (5th Cir. 2001) (distinguishing *Mobil* on the grounds that it involved "the Attorney General's *explicit*

*statutory authority*, as granted via the challenged act itself, to 'investigate and bring an action in the name of the Commonwealth to enjoin any violation of [the statute]'").

In some contexts, the Attorney General of Maryland *does* have an "independent power to enforce" analogous to that at issue in *Mobil*.  For example, the Attorney General has the independent power to investigate and enforce violations of the Maryland Antitrust Act separate and apart from his general role as legal representative of State agencies.  *See* Md. Code Ann., Comm. Law §§ 11-201–11-213.  The same is true for the Consumer Protection Act, *id.* §§ 13-101–13-501, which the General Assembly authorized the Attorney General to administer, investigate, and enforce independently of any other State agency.  *See id*. §§ 13-201–13-204.  In those instances, the Attorney General may well have the "special relation" necessary under *Ex parte Young*.

The same describes the district court cases that Mr. Ali cites for the proposition that courts have applied *Mobil* to satisfy *Ex parte Young*, Opp. at 10 n.2; they involve actions for which the attorney general had the type of independent enforcement authority that the Attorney General of Maryland has in the antitrust and consumer protection contexts.  For example, *Farm Labor Organizing Committee v. Stein* involved the North Carolina Attorney General's independent authority to investigate and prosecute "trusts and combinations against trade," 2018 WL 3999638, *13, *report and recommendation adopted* 2018 WL 4518696 (M.D.N.C. 2018), and *Does 1-5 v. Cooper* involved the Attorney General's power to criminally prosecute sex offenders, again, independently of the State

agencies that he represents, 40 F. Supp. 3d 657, 674 (M.D.N.C. 2014).[1]  None of these cases supports subject matter jurisdiction under the facts of this case.

Nor does *Jordahl v. Brnovich*, 336 F. Supp. 3d 1016 (D. Ariz. 2018), support the application of *Ex parte Young* here.  As the Attorney General explained in his opening memorandum, ECF 10-1 at 9 n.4, the Arizona district court concluded that the Attorney General of Arizona was a proper defendant only because the county agency that had denied plaintiff's contract had done so out of fear that it would be prosecuted by the Attorney General for misuse of state funds under Arizona law, 336 F. Supp. 3d at 1036.  The court thus concluded that, when viewed "together with the actions of the County," the attorney general's authority was sufficient to "form a clear and plausible causal chain resulting in Plaintiff's alleged constitutional injuries."  *Id.*  Here, by contrast, Mr. Ali has not even submitted a bid, much less had one rejected, and the complaint contains no allegations that the Attorney General is threatening State officials with prosecution if they do not enforce the Order.

We know from the case law that the Attorney General's general responsibility to enforce the laws of the state is not enough to invoke *Ex parte Young*'s "narrow exception" to sovereign immunity.  *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 76 (1996).  At the same time, we also know the authority need not appear on the face of the challenged

---

[1] The only exception—*City of Bristol, Virginia v. Early*, 145 F. Supp. 2d 741 (W.D. Va. 2001)—is distinguishable for another reason.  It cited *Mobil* for the proposition that "the Virginia Attorney General is a proper defendant where a party seeks declaratory judgment that a state statute is preempted by federal law," *id.* at 746, which is plainly not the case here.

5

act itself. *Ex parte Young*, 209 U.S. 123, 157 (1908). The line lies somewhere between those two clearer cases, where the official has a connection to the challenged act that is "specific," *McBurney*, 616 F.3d at 401, and that gives rise to a "special duty," *Wright v. North Carolina*, 787 F.3d 256, 262 (2015).

As the Fourth Circuit described it in *Limehouse*, the *Ex parte Young* analysis ultimately amounts to a measure of the state official's "*proximity to* and *responsibility for* the challenged state action.*" 549 F.3d at 333. Here, the Attorney General has no "responsibility for" enforcement of the Executive Order, and the only authority that Mr. Ali identifies—the Attorney General's authority to initiate debarment proceedings for violations of Maryland's commercial antidiscrimination policy, Opp. at 8—is not "proximate" to the Order because it arises two steps later, i.e., only *after* a vendor has, for example, falsely certified his compliance with Maryland's commercial nondiscrimination policy *and* been adjudicated by the Commission on Civil Rights to be in violation of that policy. As described above and in the Attorney General's opening memorandum, that is not enough under Fourth Circuit precedents.

## II. THE ATTORNEY GENERAL HAS NOT REJECTED OR THREATENED TO REJECT MR. ALI'S EFFORTS TO BID ON GOVERNMENT CONTRACTS.

Even if the Attorney General had a specific and special duty to enforce the Executive Order or its certification requirement, this Court would not have jurisdiction under *Ex parte Young* unless the Attorney General had in fact "acted or threatened to act." *McBurney*, 616 F.3d at 402; *see generally* Memorandum in Support of Attorney General's Motion to Dismiss (ECF 10-1) at 8. Mr. Ali again relies on *Mobil* in response, this time for the

proposition that "the attorney general's obligation to enforce the threat[2] constitutes a threat to act, at least when [he] has not expressly 'disclaimed any intention of exercising [his] enforcement authority.'"  Opp. at 10 (quoting *Mobil*, 940 F.2d at 76).  As discussed above, the Attorney General here does not have any "obligation to enforce" the Executive Order separate and apart from his general responsibilities as Maryland's chief legal officer, and *Mobil* does not say otherwise, as it does not address sovereign immunity or *Ex parte Young* at all.

As for "disclaiming" any intention of enforcing the challenged act, that is a relevant consideration in the standing context—which is what *Mobil* involved—where it bears on whether the plaintiff has established that he faces "a reasonable threat of criminal prosecution and that there is thus a ripe case or controversy for this court to adjudicate." *United States v. Commonwealth of Virginia*, 139 F.3d 984, 987 n.3 (4th Cir. 1998) (citing *Mobil*, 940 F.2d at 76); *see also Does 1-5*, 40 F. Supp. 3d at 671-72 (concluding in case involving criminal provisions applicable to sex offenders that, "where the State has not disclaimed any intention of enforcing [the challenged act], Plaintiffs need not actually violate [the act], or be proactively threatened with prosecution prior to violation, in order to have standing to challenge its constitutionality").  Within the context of sovereign immunity, however, the rule is different, as it is grounded in the requirement that the alleged violation of federal law be "ongoing."  As the Fourth Circuit observed in *Gilmore*,

---

[2] The word "threat" here might be a typographical error, and perhaps should read as "law" or "act."

"[t]he requirement that the violation of federal law be ongoing is satisfied when a state officer's enforcement of an allegedly unconstitutional state law is threatened, even if the threat is not yet imminent."  252 F.3d at 330.  And the Fourth Circuit is not alone; "[t]he requirement that there be some actual or threatened enforcement action before *Young* applies has been repeatedly applied by the federal courts."  *Okpalobi*, 244 F.3d at 415. "Because the Attoney General has not enforced, threatened to enforce, or advised other agencies to enforce [the Executive Order] against [Mr. Ali], the *Ex parte Young* fiction cannot apply."  *McBurney*, 616 F.3d at 402.

## CONCLUSION

The Eleventh Amendment bars Mr. Ali's complaint against the Attorney General.

Respectfully submitted,

BRIAN E. FROSH
Attorney General of Maryland

/s/ Adam D. Snyder
_____
ADAM D. SNYDER
Assistant Attorney General
Bar No. 25723
Office of the Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland  21202
(410) 576-6398
(410) 576-6955 (facsimile)
asnyder@oag.state.md.us

Attorneys for Defendant Brian E. Frosh,
Attorney General of Maryland

## CERTIFICATE OF SERVICE

I hereby certify that on April 8, 2019, the foregoing document was filed with the Clerk of the Court and served on all counsel of record electronically through the Court's CM/ECF system.

   /s/ Adam D. Snyder   
Adam D. Snyder
