IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| SAQIB ALI, | * | |
| *Plaintiff*, | * | |
| v. | * | No. 1:19-CV-00078-CCB |
| LAWRENCE HOGAN, *et al.*, | * | |
| *Defendants*. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

MEMORANDUM IN SUPPORT OF
ATTORNEY GENERAL FROSH'S MOTION TO DISMISS
THE FIRST AMENDED COMPLAINT

BRIAN E. FROSH
Attorney General of Maryland

ADAM D. SNYDER
Assistant Attorney General
Bar No. 25723
Office of the Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland  21202
(410) 576-6398
(410) 576-6955 (facsimile)
asnyder@oag.state.md.us

Attorneys for Defendant Brian E. Frosh,
Attorney General of Maryland

## TABLE OF CONTENTS

Page

STATEMENT OF FACTS ............................................................................................................ 2

ARGUMENT .................................................................................................................................. 2

    I.      STANDARD OF REVIEW ................................................................................................ 2

    II.     MR. ALI'S CLAIM AGAINST THE ATTORNEY GENERAL IS BARRED BY THE ELEVENTH AMENDMENT TO THE UNITED STATES CONSTITUTION. ......................... 3

          A.     The General Authority to Enforce the Laws of State Does Not Constitute a "Special Relation" to the Executive Order. .............................. 6

          B.     Mr. Ali Does Not Allege that the Attorney General Has Acted or Threatened to Act Against Him. .................................................................. 9

CONCLUSION ............................................................................................................................. 11

# TABLE OF AUTHORITIES

Page

## Cases

*1st Westco. Corp. v. School Dist. of Philadelphia*, 6 F.3d 108 (3d Cir. 1993) ................... 9

*Adams v. Bain*, 697 F.2d 1213 (4th Cir. 1982) .................................................................. 3

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................................... 2

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .............................................................. 2

*Board of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001) ................................. 3

*Borkowski v. Baltimore County, Maryland*, No. CV DKC 18-2809,
    2019 WL 4750296 (D. Md. Sept. 30, 2019) ................................................................ 3

*Children's Healthcare is a Legal Duty, Inc. v. Deters*, 92 F.3d 1412 (6th Cir. 1996) ........ 7

*College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*,
    527 U.S. 666 (1999) ..................................................................................................... 4

*Doyle v. Hogan*, No. CV DKC 19-0190, 2019 WL 3500924 (D. Md. Aug. 1, 2019) ........ 7

*Ex parte Young*, 209 U.S. 123 (1908) ........................................................................ passim

*Green v. Mansour*, 474 U.S. 64 (1985) ............................................................................. 5

*Harris v. McDonnell*, 988 F. Supp. 2d 603 (W.D. Va. 2013) ............................................ 9

*Hutto v. South Carolina Retirement System*, 773 F.3d 536 (4th Cir. 2014) ................ 5, 6, 7

*In re Creative Goldsmiths of Washington, D.C., Inc., Debtor*,
    119 F.3d 1140 (4th Cir. 1997) ...................................................................................... 4

*Jordahl v. Brnovich*, 336 F. Supp. 3d 1016 (D. Ariz. 2018) ............................................ 10

*Kelley v. Metropolitan County Bd. of Educ.*, 836 F.2d 986 (6th Cir. 1987) ....................... 9

*Long v. Van de Kamp*, 961 F.2d 151 (9th Cir. 1992) ......................................................... 9

*Lowery v. Prince George's County, Md.*, 960 F. Supp. 952 (D. Md. 1997) ....................... 4

*McBurney v. Cuccinelli*, 616 F.3d 393 (4th Cir. 2010) ............................................... passim

*Okpalobi v. Foster*, 244 F.3d 405 (5th Cir. 2001) .................................................................. 9

*Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984) ........................................ 3

*Quern v. Jordan*, 440 U.S. 332 (1979) .................................................................................. 4

*Seminole Tribe of Florida v. Florida*, 517 U.S. 44 (1996) ................................................ 4, 5

*South Carolina Wildlife Fed'n v. Limehouse*, 549 F.3d 324 (4th Cir. 2008) .............. 5, 6, 9

*Wag More Dogs, LLC v. Cozart*, 680 F.3d 359 (4th Cir. 2012) ........................................... 3

*Waste Management Holdings, Inc. v. Gilmore*, 252 F.3d 316 (4th Cir. 2001) ................... 7

*Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989) ................................................ 4

## Constitution

U.S. Const. amend. XI .................................................................................................. 3, 4, 5

U.S. Const., amend. I .............................................................................................................. 1

## Statutes

42 U.S.C. § 1983 ..................................................................................................................... 4

Md. Code Ann., Crim. Law § 9-101(a)(4) ........................................................................... 10

Md. Code Ann., State Fin. & Proc. § 11-205.1 ................................................................... 10

Md. Code Ann., State Fin. & Proc. § 16-202 ........................................................................ 8

Md. Code Ann., State Fin. & Proc. § 16-203(a)(1)-(7) ......................................................... 8

Md. Code Ann., State Fin. & Proc. § 16-203(a)(8)-(12) ....................................................... 8

Md. Code Ann., State Fin. & Proc. § 16-203(a)(12) ......................................................... 7, 8

Md. Code Ann., State Fin. & Proc. § 19-101(a) .............................................................. 7, 10

Md. Code Ann., State Fin. & Proc. § 19-107(a) .................................................................... 8

Md. Code Ann., State Gov't § 6-106 ...................................................................................... 7

Md. Code Ann., State Gov't § 12-103(2) ............................................................................... 4

**Rules**

Fed. R. Civ. Pro. 12(b)(1) ................................................................................................. 3

Fed. R. Civ. Pro. 12(b)(6) ................................................................................................. 3

## MEMORANDUM IN SUPPORT OF
## ATTORNEY GENERAL FROSH'S MOTION TO DISMISS
## THE FIRST AMENDED COMPLAINT

This case involves a First Amendment challenge to a gubernatorial executive order prohibiting State agencies from contracting with a business entity that discriminates against Israeli subcontractors, vendors, or suppliers in the preparation of its bid for a State contract. *See* Executive Order No. 01.01.2017.25, "Prohibiting Discriminatory Boycotts of Israel in State Procurement" ("Executive Order").[1]  The plaintiff, Mr. Saqib Ali, seeks a judgment declaring the Executive Order unconstitutional and an order enjoining the Governor and the Attorney General from enforcing it.  The Governor, by separate motion, asks the Court to dismiss the First Amended Complaint on multiple grounds, including that Mr. Ali lacks standing under the relaxed standards that apply to First Amendment claims because he has failed to allege that his anti-Israel boycotting activities have been "chilled" by the Executive Order and because he has not alleged a "credible threat" of prosecution.  The Attorney General, for his part, moves to dismiss the complaint on the grounds that it is barred by Eleventh Amendment immunity because the Attorney General does not have the "special relation" to the Executive Order necessary to allow the suit to proceed against him under *Ex Parte Young*, 209 U.S 123 (1908).  *See McBurney v. Cuccinelli*, 616 F.3d 393, 399 (4th Cir. 2010).

---

[1] The Executive Order is attached to the First Amended Complaint and as Exhibit A to the Memorandum in Support of Governor Hogan's Motion to Dismiss the First Amended Complaint.

**STATEMENT OF FACTS**

The memorandum in support of the Governor's initial motion to dismiss (ECF 9-1) describes the allegations of the initial complaint and the larger factual and legal context of this case and others like it.  And the memorandum in support of the Governor's motion to dismiss the First Amended Complaint describes how the parties' positions have evolved during the course of briefing and argument on the initial motion and the Court's resolution of those arguments thus far.

For purposes of Eleventh Amendment immunity, the factual allegations of the First Amended Complaint remain that the Governor issued the Executive Order and that the Attorney General is responsible for "supervising and directing the legal business of the State of Maryland and its executive agencies" and "enforcing and defending the constitutionality of Maryland law."  ECF 22 at 3 (¶ 8).  These general characterizations of the Attorney General's role within State government are the only grounds on which Mr. Ali alleges that the Attorney General has the "special relation" necessary to establish jurisdiction under *Ex parte Young*.

**ARGUMENT**

I.  **STANDARD OF REVIEW**

To survive a motion to dismiss for failure to state a claim on which relief can be granted, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Although the Court is required to "take the facts in the light most favorable to the plaintiff," the Court "need not

accept legal conclusions couched as facts." *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012) (internal quotation marks omitted). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679.

The standard of review applicable under Rule 12(b)(1)[2] is similar. The plaintiff bears the burden of proof as to establishing jurisdiction. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). Where a defendant contends that the complaint "fails to allege facts upon which subject matter jurisdiction can be based," all the facts alleged in the complaint "are assumed to be true and the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration." *Id*.

## II. MR. ALI'S CLAIM AGAINST THE ATTORNEY GENERAL IS BARRED BY THE ELEVENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

Mr. Ali's claim against the Attorney General should be dismissed because State officials like the Attorney General are not susceptible to suit in federal court without a valid waiver or abrogation of its sovereign immunity. *See* U.S. Const. amend. XI; *Board of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001). The Eleventh Amendment applies to the State and its agencies, *Pennhurst State Sch. & Hosp. v. Haldeman*, 465 U.S. 89, 100 (1984), and a suit against a state official in his official capacity "is no different from a suit against the State itself." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989);

---

[2] Although the Fourth Circuit has not yet resolved whether Eleventh Amendment immunity is best asserted through Rule 12(b)(1) or 12(b)(6), this district "favor[s] analysis under Rule 12(b)(1)." *Borkowski v. Baltimore County, Maryland*, No. CV DKC 18-2809, 2019 WL 4750296, at *7 (D. Md. Sept. 30, 2019).

3

*see* ECF 22 at 2-3 (¶¶ 7, 8). Accordingly, the Attorney General is unquestionably protected by Eleventh Amendment immunity. *See, e.g., In re Creative Goldsmiths of Washington, D.C., Inc.*, 119 F.3d 1140 (4th Cir. 1997) (treating Maryland State Comptroller as equivalent to the State of Maryland and dismissing the action on Eleventh Amendment grounds).

The Eleventh Amendment bars a private litigant's suit against a State, its agencies, and officials, regardless of the type of relief sought, *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 58 (1996), unless either (1) the State has expressly waived its immunity by "'clear declaration,'" *College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 676 (1999) (citations omitted), or (2) Congress has "unequivocally expressed its intent to abrogate the immunity" in a statute "passed pursuant to a constitutional provision granting Congress the power to abrogate." *Seminole Tribe*, 517 U.S. at 55, 59 (internal quotation marks and brackets omitted). The State of Maryland has not waived its Eleventh Amendment immunity or the immunity of its agencies, officials, and employees. *See* Md. Code Ann., State Gov't § 12-103(2); *see also In re Creative Goldsmiths*, 119 F.3d at 1149; *Lowery v. Prince George's County, Md.*, 960 F. Supp. 952, 954 n.4 (D. Md. 1997). Nor does the complaint here assert any statute in which Congress has expressed any intent to abrogate the States' immunity. *See Quern v. Jordan*, 440 U.S. 332, 345 (1979) (42 U.S.C. § 1983 does not abrogate immunity of States). Therefore, because Eleventh Amendment immunity has neither been waived nor abrogated here, Mr. Ali's claim against the Attorney General is barred.

Nor may his claim against the Attorney General be maintained under the exception to Eleventh Amendment immunity recognized in *Ex parte Young*, 209 U.S. 123 (1908). *Ex parte Young* offers a "narrow exception," *Seminole Tribe*, 517 U.S. at 76, one that authorizes a private suit against a State official for "prospective equitable relief to prevent a continuing violation of federal law." *Green v. Mansour*, 474 U.S. 64, 68 (1985). The *Ex parte Young* exception permits suit only against an official who has a "special relation" to the enforcement of the challenged statute or government action. *Ex parte Young*, 209 U.S. at 157 (citation omitted); *McBurney*, 616 F.3d at 399. And even officials who have a "special relation" to enforcement of the challenged law are not subject to suit under *Ex parte Young* unless the officials "threaten and are about to commence proceedings" to enforce the law. *Ex parte Young*, 209 U.S. at 155-56; *see also McBurney*, 616 F.3d at 402.

As the Fourth Circuit has applied it, the "special relation" requirement under *Ex parte Young* "'has served as a measure of proximity to and responsibility for the challenged state action.'" *McBurney*, 616 F.3d at 400-01 (quoting *South Carolina Wildlife Fed'n v. Limehouse*, 549 F.3d 324, 332-33 (4th Cir. 2008)). This requirement both ensures "'that a federal injunction will be effective with respect to the underlying claim,'" *id.*, and "prevents parties from circumventing a State's Eleventh Amendment immunity." *Hutto v. South Carolina Retirement System*, 773 F.3d 536, 550 (4th Cir. 2014).

> As the Court explained in *Ex parte Young*, if the "constitutionality of every act passed by the legislature could be tested by a suit against the governor and attorney general, based upon the theory that the former, as the executive of the State, was, in a general sense, charged with the execution of all its laws, and the latter, as attorney general, might represent the state in litigation involving the enforcement of its statutes," it would eviscerate "the

5

> fundamental principle that [States] cannot, without their assent, be brought into any court at the suit of private persons."

*Id.* (quoting *Ex parte Young*, 209 U.S. at 157)). The First Amended Complaint fails to allege a connection between the Executive Order and the Attorney General sufficient to establish the "special relation" required under *Ex parte Young*.

### A. The General Authority to Enforce the Laws of State Does Not Constitute a "Special Relation" to the Executive Order.

The amended complaint contains two allegations about the Attorney General's connection with the challenged Executive Order, neither of which justifies the application of *Ex parte Young*. First, Mr. Ali alleges that the Attorney General has a general responsibility for "supervising and directing the legal business of the State of Maryland and its executive agencies" and "enforcing and defending the constitutionality of Maryland law." ECF 22 at 3 (¶ 8). The Fourth Circuit has made clear, however, that a suit may not proceed under *Ex parte Young* "when an official merely possesses '[g]eneral authority to enforce the laws of the state.'" *McBurney*, 616 F.3d at 399 (quoting *Limehouse*, 549 F.3d at 333). That is why, in *McBurney*, the Fourth Circuit upheld the application of Eleventh Amendment immunity to the Attorney General of Virginia despite allegations about the Attorney General's duties that are almost identical to those that Mr. Ali makes here: "'providing legal advice and representation to the Governor and executive agencies, state boards and commissions, and institutions of higher education; defending the constitutionality of state laws when they are challenged in court; and enforcing state laws that protect businesses and consumers.'" *Id.*

6

Nor is it enough that the Attorney General's general authority to enforce state laws includes, in some instances, Maryland procurement law. Although, as Mr. Ali points out, ECF 22 at 9 (¶38), the Attorney General has the authority to seek debarment of vendors who violate Maryland's procurement laws in certain ways—including, for example, those who violate the State's Commercial Nondiscrimination Policy, *see* Md. Code Ann., State Fin. & Proc. § 16-203(a)(12)[3]—his authority there is simply a specific application of his general authority to defend and enforce the laws of the State, which is not sufficient to provide this Court with jurisdiction under *Ex parte Young*. *Waste Management Holdings, Inc. v. Gilmore*, 252 F.3d 316, 331 (4th Cir. 2001) ("'General authority to enforce the laws of the state is not sufficient to make government officials the proper parties to litigation challenging the law.'" (quoting *Children's Healthcare is a Legal Duty, Inc. v. Deters*, 92 F.3d 1412, 1416 (6th Cir. 1996)).[4]

---

[3] The State's Commercial Nondiscrimination Policy prohibits vendors from discriminating on the basis of, among other things, "religion, ancestry or national origin." State Fin. & Proc. § 19-101(a).

[4] In *Doyle v. Hogan*, Judge Chasanow recently denied the Attorney General's motion to dismiss on Eleventh Amendment immunity grounds because the statute at issue—though it "award[ed] the statute's disciplinary and regulatory maintenance to specific bodies"—did not "explicitly prohibit oversight by the . . . attorney general." No. CV DKC 19-0190, 2019 WL 3500924, *11 (D. Md. Aug. 1, 2019), *case dismissed on other grounds at* 2019 WL 4573382 (D. Md. Sept. 20, 2019). As a general principle, the court's holding in *Doyle* cannot be squared with Fourth Circuit precedent. Because statutes rarely, if ever, "explicitly prohibit" enforcement by any particular official, the reasoning of *Doyle*, if adopted more broadly, would result in the Attorney General being a defendant in *every* case challenging a state statute simply because he "is the legal adviser of and shall represent and otherwise perform all of the legal work for each officer and unit of the State government." Md. Code Ann., State Gov't § 6-106. *Ex parte Young* and its progeny clearly preclude that result. *See Hutto*, 773 F.3d at 550.

7

The Attorney General's debarment authority does not provide the "special relation" for enforcing the Executive Order for two other reasons as well. *First*, debarment is not a means of enforcing the Executive Order. The Executive Order is enforced by the agencies that administer their own procurement processes, and those agencies enforce it by disqualifying bidders that fail to execute the ¶C certification required under the Order. Had Mr. Ali submitted the bids he alleged an interest in submitting, ECF 22 at 11 (¶53), 12 (¶57), and had failed to execute the certification, the Executive Order might have been "enforced" by the agencies overseeing those procurements (e.g., the Maryland Insurance Administration), but not by the Attorney General.

*Second*, debarment is an entirely separate process that is at least one step removed from any violation of the procurement law. A debarment action may be initiated only after the vendor has been convicted of a qualifying offense, Md. Code Ann., State Fin. & Proc., §§ 16-202, 16-203(a)(1)-(7), or "found" to have violated certain provisions by a court or through an adjudicated contested case hearing, *id.* § 16-203(a)(8)-(12). Debarment proceedings thus do not enforce the underlying procurement law; they debar a vendor who has already been investigated and adjudicated as having violated the procurement law. And with respect to the debarment provision that Mr. Ali identifies—*id.* § 16-203(a)(12), *see* ECF 22 at 9 (¶38)—the investigation and adjudication is performed by the Commission on Civil Rights, not the Attorney General. *See* State Fin. & Proc. § 19-107(a). Because the Attorney General's authority to initiate debarment proceedings comes only later, i.e., only *after* a vendor has, for example, falsely certified his compliance with Maryland's commercial nondiscrimination policy *and* been adjudicated by the Commission on Civil

8

Rights to be in violation of that policy—it is not "proximate" to underlying enforcement of the Order that Mr. Ali postulates. *See Limehouse*, 549 F.3d at 333 (stating that the *Ex parte Young* analysis ultimately amounts to a measure of the state official's "proximity to and responsibility for the challenged state action").

### B. Mr. Ali Does Not Allege that the Attorney General Has Acted or Threatened to Act Against Him.

Even if the Attorney General had a theoretical "special relation" to the Executive Order, this Court "cannot apply *Ex parte Young* because the Attorney General has not acted or threatened to act." *McBurney*, 616 F.3d at 402; *see also Okpalobi v. Foster*, 244 F.3d 405, 415 (5th Cir. 2001) ("The requirement that there be some actual or threatened enforcement action before *Young* applies has been repeatedly applied by the federal courts.") (citing *1st Westco. Corp. v. School Dist. of Philadelphia*, 6 F.3d 108, 113 (3d Cir. 1993); *Long v. Van de Kamp*, 961 F.2d 151, 152 (9th Cir. 1992); *Kelley v. Metropolitan County Bd. of Educ.*, 836 F.2d 986, 990-91 (6th Cir. 1987)). As noted above, the Supreme Court in *Ex parte Young* allowed a suit to proceed against the Minnesota Attorney General because he had already "commenced proceedings to enforce" the challenged statute. 209 U.S. at 160; *see also Harris v. McDonnell*, 988 F. Supp. 2d 603, 608 (W.D. Va. 2013) (noting the same). By contrast, the Fourth Circuit held in *McBurney* that *Ex parte Young* did not apply to the Virginia Attorney General because he had not "personally denied" the appellant's public records requests or "advised any other agencies to do so." 616 F.3d at 402.

9

As discussed above, the Attorney General's role under the debarment statute is too far removed from "enforcement" of the Executive Order to justify application of *Ex parte Young*, but even if that were not the case, jurisdiction here would still not lie because Mr. Ali has not alleged that the Attorney General has enforced the terms of the Executive Order against him or has threatened to do so. The same is true for the other statute that Mr. Ali cites as the basis for his allegation that he is under a "credible threat" of enforcement: § 9-101(a)(4) of the Criminal Law Article. That provision makes it a misdemeanor to "willfully and falsely make an oath or affirmation as to a material fact . . . in an affidavit required by any state . . . government . . . with legal authority to require the issuance of an affidavit."[5] There too, Mr. Ali has not alleged that the Attorney General has threatened to prosecute him for violating the terms of the Executive Order.

That should come as no surprise, as the allegations of the amended complaint establish that Mr. Ali can truthfully execute the ¶C certification that serves as the Executive Order's operative provision. And, as the Court observed in its October 1 memorandum, the Governor "has expressly disavowed enforcement of Section B against Mr. Ali" and other would-be vendors who do not discriminate against Israeli subcontractors, vendors, and suppliers in the formation of their State bids. ECF 20 at 8-9.

That fact distinguishes this case from *Jordahl v. Brnovich*, 336 F. Supp. 3d 1016 (D. Ariz. 2018). There, the Arizona district court declined to dismiss the Attorney General

---

[5] Although Mr. Ali does not include it within his allegations, § 11-205.1 of the State Procurement Article also prohibits "false or fraudulent statement[s]" in the procurement context.

from another anti-Israel boycott case, but it did so because, when the plaintiff declined to sign the certification required by the Arizona statute, the relevant agency did not renew the plaintiff's contract and refused to pay the plaintiff for "services rendered," *id.* at 1033, "presumably" out of fear of prosecution by the Attorney General, *id.* at 1036.  The district court thus did not conclude that the Attorney General's enforcement authority was sufficient, on its own, to justify application of *Ex parte Young*.  Only when viewed "together with the actions of the [agency]" was his authority sufficient to "form a clear and plausible causal chain resulting in Plaintiff's alleged constitutional injuries." *Id.*  Even assuming that the district court's analysis in *Jordahl* is consistent with Fourth Circuit precedent, *see McBurney*, 616 F.3d at 401-02, its conclusion would not govern this case, where Mr. Ali has not even submitted a bid, much less had one rejected, and where the complaint contains no allegations that the Attorney General is threatening anyone—would-be vendors *or* State officials—with enforcement of the Order.  "Because the Attorney General has not enforced, threatened to enforce, or advised other agencies to enforce [the Executive Order] against [Mr. Ali], the *Ex parte Young* fiction cannot apply." *McBurney*, 616 F.3d at 402.

## CONCLUSION

The Eleventh Amendment bars Mr. Ali's amended complaint against the Attorney General.

          Respectfully submitted,

          BRIAN E. FROSH
          Attorney General of Maryland

/s/ Adam D. Snyder
ADAM D. SNYDER
Assistant Attorney General
Bar No. 25723
Office of the Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
(410) 576-6398
(410) 576-6955 (facsimile)
asnyder@oag.state.md.us

Attorneys for Defendant Brian E. Frosh,
Attorney General of Maryland